IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| WILLIAM MARCOVECCHIO,<br><br>                          Plaintiff,<br><br>v.<br><br>WRIGHT MEDICAL GROUP, INC.,<br>a Delaware corporation, and WRIGHT<br>MEDICAL TECHNOLOGY, INC., a<br>Delaware corporation,<br><br>                      Defendants. | **MEMORANDUM DECISION AND ORDER**<br>**(1) GRANTING WRIGHT MEDICAL GROUP'S**<br>**MOTION TO DISMISS FOR LACK OF**<br>**PERSONAL JURISDICTION;**<br>**(2) GRANTING IN PART WRIGHT MEDICAL**<br>**TECHNOLOGY'S PARTIAL MOTION TO**<br>**DISMISS FOR FAILURE TO STATE A CLAIM;**<br>**AND (3) DENYING MOTION TO STRIKE**<br><br><br>Case No. 2:18-cv-00274<br>District Judge Jill N. Parrish |

This matter is before the court on the Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant Wright Medical Group, Inc. ("WMG") (ECF No. 9) and the Partial Motion to Dismiss Plaintiff's Amended Complaint and Motion to Strike filed by Defendant Wright Medical Technology ("WMT") (ECF No. 7).

## BACKGROUND

Plaintiff William Marcovecchio ("Plaintiff") brings this action against WMG and WMT (collectively "Defendants") for injuries arising out of the Wright Medical Total Hip System ("Wright Hip System" or "Hip System").[1] Plaintiff asserts claims for strict products liability, negligence, breach of express and implied warranties, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and punitive damages.

---

[1] This is one of several actions filed in the United States District Court, District of Utah, against WMG and WMT regarding the Wright Hip System. Although the actions are brought by different plaintiffs and allege different surgery dates, the pleadings are otherwise substantially identical. *See e.g. Fugal v. Wright Med. Grp., Inc.*, No. 2:18-cv-00367; *Jorgensen v. Wright Med. Grp., Inc.*, No. 2:18-cv-366; and *Myrer v. Wright Med. Grp., Inc.*, No. 2:18-cv-359.

WMT is a Delaware corporation with its principal place of business in Memphis Tennessee. WMT manufactured, marketed, and sold the Wright Hip System throughout the United States, including in Utah.

WMG was incorporated to act as a parent and holding company for various entities, including WMT. It is a Delaware corporation with its principal place of business in Memphis, Tennessee. Debby Daurer, Legal Senior Manager at WMT, testified by affidavit that WMG and WMT are separate entities that maintain separate accounting and banking records. *See* WMG Mot. Dismiss, Exhibit 1 ("Daurer Affidavit"). Daurer testified that WMG has no contacts with Utah and that WMG did not manufacture, market, or sell the Hip System. Rather, WMG is WMT's sole shareholder and has no employees. WMG is also the holding company for Wright Medical Europe, Wright Medical Australia PTY Limited, Wright Medical Deutschland GmbH, Wright Medical Italy, and Wright Medical Technology Canada.

On May 3, 2006, Plaintiff underwent a right total hip replacement surgery at LDS Hospital in Salt Lake City, Utah. In a hip replacement surgery, the natural hip joint is replaced with an artificial hip joint consisting of artificial components including a new acetabular cup (the socket), liner (replacing the cartilage), femoral head (ball), and femoral stem. Plaintiff was implanted with the Wright Hip System consisting of four Wright modular components: 1) PROFEMUR® RAZ STEM (Size 7), 2) PROFEMUR® NECK, 3) CONSERVE® TOTAL A CLASS® Head, Short Neck (size 54 mm), and CONSERVE® PLUS SPIKED CUP (size 58 mm).

The Wright Hip System differs from most other hip implants in that the metal femoral head is in direct contact with a metal acetabular cup. Although other "metal-on-metal" prosthetics exist, Plaintiff alleges that Wright did not properly test the Wright Hip System for safety, efficacy, and durability, and that Wright "aggressively marketed" the product without "screening, selecting, or

training the surgeons" who would be implanting it. Plaintiff alleges the Hip System failed when the prosthetic joint detached, disconnected, created metallic debris, and/or loosened from Plaintiff's acetabulum. Plaintiff alleges that the failure was due to the defective design and manufacture of the Wright Hip System, and that Defendants knew or should have known of the design defects at the time his Hip System was implanted. Plaintiff further alleges that, despite this knowledge, Defendants concealed the flaws with the Hip System and continued to market it. Because of the failure of the Hip System, Plaintiff was required to undergo revision surgery to remove and replace the allegedly defective product on March 31, 2016.

Plaintiff filed this action on March 30, 2018 and amended his complaint on June 29, 2018. Defendants filed the pending motions on July 25, 2018. The court first addresses WMG's Motion to Dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and then turns to WMT's Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and finally WMT's Motion to Strike.

## I. WMG'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

WMG seeks dismissal from the suit on the grounds that the court lacks personal jurisdiction over it. *See* Fed. R. Civ. P. 12(b)(2). WMG argues that it is not subject to this court's personal jurisdiction because 1) WMG is a holding company that did not design, market, or sell the Wright Hip System and thus WMG lacks minimum contacts with Utah; and 2) WMT's contacts with Utah cannot be imputed to WMG because Plaintiff has not successfully alleged an agency or alter ego theory of liability. Plaintiff responds that WMG's filings with the Security and Exchange Commission (SEC) and certain press releases issued by WMG establish that WMG was involved in the design, marketing, and sale of the Wright Hip System and that it therefore has the requisite minimum contacts with Utah to subject it to personal jurisdiction in this court.

## A. BURDEN OF PROOF

At the motion to dismiss stage, "the plaintiff's burden is light." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). "[T]he plaintiff need only make a prima facie showing that jurisdiction exists." *Id.* "[O]nly the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Id.* However, "[t]he allegations in the complaint must be taken as true [only] to the extent they are uncontroverted by the defendant's affidavits." *Id.* (quoting *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984)).

Both parties rely on evidence outside of the pleadings to support their arguments on the motion to dismiss. While "[g]enerally, a district court must convert a motion to dismiss into a motion for summary judgment when matters outside the pleadings are relied upon," *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005), the court may consider "affidavit[s] or other written materials" on a motion to dismiss for lack of personal jurisdiction, *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). WMG has submitted the affidavit of Debby Daurer, Legal Senior Manager at WMT to controvert Plaintiff's conclusory allegation that WMG is subject to the court's jurisdiction. In response, Plaintiff challenges Daurer's affidavit with publically available documents, including "WMG's public statements to the [SEC], WMG's press releases, and various marketing material created by WMG." Opp'n WMG Mot. Dismiss at 9. Plaintiff argues that these documents are "competent evidence" that controvert the Daurer Affidavit and firmly establish WMG's role in the marketing and selling of the Hip System. *Id.* The court reviews the testimonial and documentary evidence submitted by the parties in evaluating the jurisdictional issue.[2]

---

[2] Plaintiff attached the following exhibits to its opposition memorandum: WMG's Form 10-K's filed in 2001 and 2013 with the SEC; six press releases published by WMG; the transcript from

## B. Legal Standard

"The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). Consequently, Utah law governs personal jurisdiction in this case. Utah's long-arm statute extends jurisdiction over defendants "to the fullest extent permitted by the due process clause of the Fourteenth Amendment." Utah Code § 78B-3-201(3). Accordingly, the personal jurisdiction analysis in this case involves a single inquiry: whether the exercise of personal jurisdiction over WMG comports with due process. *See Old Republic*, 877 F.3d at 903 (holding that personal jurisdiction analysis required a single due process inquiry because Colorado's long-arm statute extends jurisdiction to the Constitution's full extent).

Under the due process clause, a court may exercise jurisdiction over a defendant so long as: (1) "the defendant purposefully established minimum contacts within the forum [s]tate," and (2) "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"

---

the July 15, 2015 hearing before Judge Bruce Jenkins on a motion to dismiss WMG for lack of personal jurisdiction in *Curtis W. v. Wright Medical Group, Inc. et. al*, Case No. 2:15-cv-141; Judge David Nuffers' Memorandum Decision and Order Taking Defendant's Motion to Dismiss Under Advisement in *Martin L. Smith v. Wright Medical Group, Inc. et al*. Case No. 2:15-cv-0140; a document summarizing the November 29, 2016 hearing on Wright Medical Group's Motion for Summary Judgment, Case No. JCCP4710 before Judge Ann I. Jones of the Superior Court of the State of California for the County of Los Angeles; the transcript of that hearing; and Wright Medical Group's Form 10-Q filed with the SEC for the quarterly period ending March 31, 2014. *See* ECF No. 18.

Plaintiff suggests the court may take judicial notice of the SEC filings and press releases *only*, "as they are capable of accurate and ready determination by resort [sic] to sources whose accuracy cannot be reasonably questioned." Opp'n WMT Mot. Dismiss at 9 n.2. But it is not clear whether Plaintiff is actually invoking Fed. R. Evid. 201, which *requires* the court to take judicial notice of certain information upon the request of a party. Instead, Plaintiff asks the court not to decide whether the documents are true, but to make "a judicial determination that the statements were in fact made by the Wright Medical Group, Inc." *Id.* Because WMG does not oppose the court's consideration of the materials, the court will consider the SEC statements and Press Releases in deciding the jurisdictional issue, but the court will not consider these extrinsic documents in ruling on WMT's Motion to Dismiss for failure to state a claim.

*Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). A defendant's contacts, depending on their quality and quantity, may give rise to either general or specific jurisdiction. *Id.* Because Plaintiff has not asserted that WMG is subject to the court's general jurisdiction, the court turns to the specific jurisdiction analysis of 1) "whether the plaintiff has shown that defendant has minimum contacts with the forum" and 2) "whether the defendant has presented a 'compelling case'" that the exercise of jurisdiction does not comport with fair play and substantial justice. *Id.* at 904 (quoting *Shrader v. Biddinger,* 633 F.3d 1235, 1240 (10th Cir. 2011)). Because the court finds that WMG does not have minimum contacts with the forum, the court does not reach the second question.

## C. Minimum Contacts

A defendant has minimum contacts with the state if (1) the defendant "purposefully directed its activities at residents of the forum state," and (2) the plaintiff's injuries "arise out of [the] defendant's forum-related activities." *Id.* (quoting *Shrader*, 633 F.3d at 1239). Plaintiff alleges that WMG and WMT are each subject to personal jurisdiction individually in the state of Utah because they "conducted regular and sustained business in Utah by selling and distributing [their] products in Utah, and engaged in substantial commerce and business activity in the County of Salt Lake." Am. Compl. at ¶¶ 8–9. Alternatively, Plaintiff asserts that WMG is subject to personal jurisdiction due to WMT's contacts with the forum based on either an alter ego or agency theory. *Id.* at ¶ 12. The court first addresses WMG's individual contacts with the forum before turning to whether WMG may be subject to personal jurisdiction based on its relationship with WMT.

### 1. WMG's Contacts with the Forum

Plaintiff alleges that both WMG and WMT designed the Wright Hip System and marketed and sold the Hip System in Utah, thereby purposefully directing their activities at the forum. But

the Daurer Affidavit states that WMT, not WMG, designed, marketed, and sold the Hip System in the state of Utah. Thus, while WMT has minimum contacts with the forum, WMG does not. Plaintiff responds with excerpts from WMG's public SEC filings and press releases. Plaintiff argues these documents contradict the Daurer Affidavit because they demonstrate that "WMG has for many years publicly identified itself as the company that specializes in the design, manufacture and marketing of reconstructive joint devices" and WMG "has claimed the Wright products— including the Conserve® products at issue here—as its own." *See* Opp'n WMG Mot. Dismiss at 10. But the court has reviewed the documentary evidence submitted by Plaintiff, including the statements identified in WMG's 2001 10-K filings and 2013 10-K filings and the press releases, and finds that they do not controvert the facts contained in the Daurer Affidavit.

Plaintiff first identifies selected statements from WMG's SEC filings, which he argues demonstrate WMG's involvement in the design, manufacture, and marketing of the Hip System. For example, in its 2001 10-K Filing, WMG states, "Wright Medical Group, Inc. (the 'Company') is a global orthopaedic device company specializing in the design, manufacture and marketing of reconstructive joint devices . . ." that "offers a comprehensive line of products for hip joint reconstruction[.]" *Id.* at 11. Plaintiff argues that this establishes WMG's individual role in the production of the hip products. The court disagrees. As a number of courts have noted in granting nearly identical motions to dismiss WMG for lack of personal jurisdiction, these statements are insufficient to establish WMG's role in the design of the Hip System.[3] First, the filings "are outdated and plaintiff[ ] [has] cherry-picked phrases out of them to support [his] position." *Dumler*

---

[3] *See e.g. Meier v. Wright Med. Tech., Inc.*, No. 14-CV-505-WMC, 2015 WL 1486688 at *3–4 (W.D. Wisc. Mar. 31, 2015); *Jorgensen v. Wright Med. Grp., Inc.*, No. 2:18-cv-366-TS, 2018 WL 6250606, at *3 (D. Utah Nov. 29, 2018); and *Myrer v. Wright Med. Grp. Inc.*, No. 2:18-cv-359, 2019 WL 251754, at *1 (D. Utah Jan. 17, 2019).

*v. Wright Med. Tech., Inc.,* No. C17-2033-LTS, 2018 WL 576848, at *6 (N.D. Iowa Jan. 26, 2018). "Second, it is common practice for annual reports to describe the business of a parent and its subsidiaries." *Id*. In fact, "consolidating the activities of a subsidiary into the parent's annual reports . . . . is allowed by both the Internal Revenue Service and the Securities and Exchange Commission, and it is recommended by generally accepted accounting principles." *Calvert v. Huckins*, 875 F. Supp. 674, 679-80 (E.D. Cal. 1995). Because there is no evidence that the filings were discussing WMG's activities and not the activities of its subsidiary, WMT, the court finds the SEC statements insufficient to controvert the testimony in the Daurer Affidavit that WMT, *not* WMG, designed, manufactured, and sold the Hip System.

Likewise, the statements made by WMG in press releases are insufficient to subject WMG to personal jurisdiction in the forum. Plaintiff offers press releases made by WMG in 2006 and 2014 as evidence of WMG's involvement with the Hip System activities. But statements such as "Wright will focus on advances" and Wright "selected the Profemur ® Modular Neck" for "Tennis Legend Jimmy Connors['] [surgery]" are insufficient to establish that WMG was involved directly with the marketing and sale of the Hip System. *See* Opp'n WMG Mot. Dismiss at 15–16. "At most, these statements show a parent company discussing the activities of its subsidiary." *US Magnesium, LLC v. ATI Titanium, LLC,* No. 2:16-CV-1158 TS, 2017 WL 913596, at *8 (D. Utah Mar. 7, 2017). As with SEC disclosures, "it is common and, in fact, expected for a parent entity to report upon events that materially impact a consolidated subsidiary." *Id.* None of the statements in the press releases contradict the testimony in the Daurer Affidavit.[4] In short, Plaintiff has not come

---

[4] Plaintiff also directs the court to a press release regarding WMG's purchase of OrthoPro, LLC, a limited liability company based in Salt Lake City, Utah that specializes in foot and ankle products. But even if this acquisition constituted purposeful availment of business opportunities in the forum, Defendant's injuries do not arise out of WMG's acquisition of OrthoPro and thus are insufficient to establish personal jurisdiction.

forward with any evidence suggesting that WMG has minimum contacts with the forum. Thus, there is no basis on which to subject WMG to personal jurisdiction in Utah.

### 2. WMT's Contacts May Not Be Imputed to WMG

Plaintiff also asserts that WMG is subject to personal jurisdiction based on its relationship with WMT. Plaintiff asserts that "[a]t all times relevant hereto, each of the Defendants was the representative, agent, employee, joint venture, or alter ego of each of the other Defendants and was acting within the scope of its authority." Am. Compl. at ¶ 12. But these conclusory allegations are insufficient to meet Plaintiff's burden of pleading that WMG should be subject to personal jurisdiction based on its relationship with WMT. A parent corporation is not subject to personal jurisdiction in a forum solely based on the subsidiary's contacts with the forum absent an allegation that either 1) the subsidiary was an agent of the parent or 2) that the two companies are so intertwined as to be the other's alter ego. *See Daimler AG v. Bauman*, 571 U.S. 117, 134–35 (2014); *see also Associated Elec. & Gas Ins. Serv. Ltd. v. Am. Int'l Grp., Inc.*, No. 2:11CV368 DAK, 2012 WL 256146, at *3 (D. Utah Jan. 27, 2012).

Plaintiff's conclusory statement that each of the Defendants was the "representative, agent, . . . or alter ego of . . . the other" is not sufficient to establish personal jurisdiction under either an agency theory or an alter ego theory. To successfully plead an agency relationship, Plaintiff must allege facts suggesting that WMT is acting on behalf of and under the control of WMG. *See Gleason v. Salt Lake City*, 74 P.2d 1225, 1230 (1937). To assert that WMT and WMG are alter egos, Plaintiff must allege facts suggesting that WMT "is so dominated by [WMG] as to be its alter ego." *Daimler*, 571 U.S. at 134–35. But even if both of these allegations were well-pled, which they are not, WMG has controverted these allegations with the Daurer Affidavit, which establishes that WMT and WMG are not so intertwined as to be indistinguishable. The testimony further establishes that the corporations are separate legal entities that maintain separate bank

accounts and act independently of each other. Plaintiff has not offered any evidence to controvert this testimony. The court will therefore not impute WMT's contacts to WMG. Because the court finds that WMG does not have minimum contacts with the forum, the court does not reach the second prong of the due process analysis.

### D. CONCLUSION

WMT marketed and sold the Hip System in Utah. Plaintiff's alleged injuries arise out of the failure of the Hip System, which Plaintiff received in Utah. While WMT has minimum contacts with the forum, WMG does not. WMG did not design the Hip System, market the Hip System, or offer any services related to the Hip System in Utah. *See* Daurer Affidavit at ¶¶ 15–17. WMG does not have minimum contacts with Utah. The court therefore grants WMG's motion to dismiss for lack of personal jurisdiction. WMG is dismissed without prejudice.

## II. WMT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT

WMT moves under Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff's claims for strict liability manufacturing defect, negligent failure to recall/retrofit, breach of express warranty, fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation. A claim is properly dismissed under Fed. R. Civ. P. 12(b)(6) if it fails to meet either the general pleading requirements of Fed. R. Civ. P. 8 or, if applicable, the more particularized pleading requirements of Fed. R. Civ. P. 9. *Seattle-First Nat. Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986).

### A. LEGAL STANDARD

#### 1. Pleading Standard

Under the general pleading standard of Fed. R. Civ. P. 8, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The burden is on the plaintiff to frame a complaint with

enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotation marks omitted). The "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Some of IHC's claims for relief are governed by Fed. R. Civ. P. 9(b). Fed. R. Civ. P. 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

When applying either standard to the factual allegations levied against the defendant "[a]t the motion-to-dismiss stage, we must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Albers v. Bd. of Cty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014) (quoting *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2013)). In evaluating a complaint on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

### 2. Extrinsic Evidence

Plaintiff attaches three exhibits to his opposition memorandum to WMT's motion to dismiss: 1) Wright Medical Group's September 24, 2017 Form 10-Q, 2) Wright Medical Group's December 31, 2006, Form 10-K, and 3) Plaintiff's Operative Report. *See* ECF No. 20. Plaintiff

quotes from and cites to these documents throughout his Opposition Memorandum. But Plaintiff has failed to articulate why the court should consider these documents. In considering a Rule 12(b)(6) motion to dismiss, the court may only consider additional materials outside the pleadings when they are central to the plaintiff's claim and are referenced in the complaint. *Utah Gospel Mission v. Salt Lake City Corp.,* 425 F.3d 1249, 1253–54 (10th Cir. 2005) (citing Fed. R. Civ. P. 12(b)); *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991). The above-named documents were not referenced in the Plaintiff's complaint, nor are they central to his claims. The court therefore disregards all references to these additional documents in evaluating the motion to dismiss.

### 3. Choice of Law

The court, sitting in diversity, applies Utah law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 80, (1938). While *Erie*'s mandate extends to Utah choice of law rules as well, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), the parties appear to stipulate that Utah law applies.[5] The court will therefore apply Utah law to the facts of this case.

### B. CLAIMS THAT MUST BE PLEAD PLAUSIBLY

WMT moves under Fed. R. Civ. P. 12(b)(6) to dismiss three of Plaintiff's claims for failure to state a claim for relief that is plausible on its face. *See* Fed. R. Civ. P. 8. These are: Count I, strict liability manufacturing defect; Count V, negligent failure to recall/retrofit; and Count VI, breach of express warranty. The court agrees with WMT that Plaintiff has failed to adequately plead these claims and therefore orders that all three claims be dismissed without prejudice.

---

[5] WMT suggests in a footnote that Tennessee law might apply to whether Plaintiff may seek punitive damages, but this issue relates only to the motion to strike, and WMT does not address choice of law anywhere else in its pleadings. *See* WMT Mot. Dismiss at 19 n.3.

### 1. Count I: Strict Liability Manufacturing Defect

"To plead a case of strict products liability against a manufacturer, a plaintiff must allege (1) that the product was unreasonably dangerous due to a defect or defective condition, (2) that the defect existed at the time the product was sold, and (3) that the defective condition was a cause of the plaintiff's injuries." *Lamb v. B & B Amusements Corp.*, 869 P.2d 926, 929 (Utah 1993). Plaintiff alleges that the Hip System was unreasonably dangerous due to manufacturing flaws[6] and that the manufacturing flaws caused Plaintiff's harm. Defendants argue that Plaintiff has not met his burden to plead a manufacturing flaw and that the claim should therefore be dismissed.

Under Utah law, "[i]n order to plead and prove a manufacturing flaw, [p]laintiffs must show that the [product] was defective as a result of a mistake in the manufacturing process." *Cerveny v. Aventis, Inc.*, No. 2:14-CV-00545, 2015 WL 13640496, at *1 (D. Utah July 14, 2015); *see also* Utah Model Jury Instructions (MUJI 2d), CV 1004 ("The [product] had a manufacturing defect if it differed from (1) the manufacturer's design or specifications or (2) products from the same manufacturer that were intended to be identical."). Plaintiff recites these elements in his Amended Complaint: "Plaintiff is informed and believes . . . that the Wright Hip System implanted in Plaintiff was defectively manufactured because it differed from the manufacturer's design and specifications, or from typical units of the same line." Am. Compl. at ¶ 37. But these are just "threadbare recitals" of the elements.

Plaintiff does allege the following defects: the Wright Hip System has "a tendency to (a) detach, disconnect and/or loosen form a patient's acetabulum, (b) generate dangerous and harmful metal debris . . . ; (c) cause pain; (d) inhibit mobility; and (e) require revision surgery." *Id.* at ¶ 36. But these all appear to be *harms* caused by the Hip System, not the actual manufacturing flaw that

---

[6] "There are three types of product defects: manufacturing flaws, design defects, and inadequate warnings regarding use." *Grundberg v. Upjohn Co.*, 813 P.2d 89, 92 (Utah 1991).

caused the harm. No other allegations in Plaintiff's complaint support his theory that the *manufacture* of the device, rather than the design itself caused Plaintiff's injury. Plaintiff responds that he has successfully stated a claim because "[t]he crux of Plaintiff's claims is that a *properly functioning artificial hip does not result in toxic levels of metal ions* . . . that necessitate a second surgery to remove the artificial hip." Opp'n WMT Mot. Dismiss at 4 (emphasis in original). In other words, Plaintiff alleges that because he was injured, there had to be a flaw. But Plaintiff ignores the fact that he needs to identify the actual flaw *in the manufacturing process* that caused the Hip System to differ from the design in order to state a claim for manufacturing defect.

Indeed, Plaintiff pleads no facts to suggest whether his harm resulted from the Hip System's design or its manufacture. The court concludes that Plaintiff has not met his burden under *Iqbal* and *Twombly* to plead a plausible claim for strict liability manufacturing defect and therefore grants WMT's motion to dismiss.

### 2.  Count V: Negligent Failure to Recall/Retrofit

WMT first argues that Plaintiff's claim for failure to recall/retrofit should be dismissed because "there is no basis under Utah law to impose a post-sale duty to retrofit or recall." WMT Mot. Dismiss at 7. Plaintiff does not dispute this argument, but rather opposes WMT's motion on other grounds. The court nevertheless addresses the issue briefly because, as noted in *Dowdy v. Coleman Co.*, No. 1:11CV45DAK, 2011 WL 6151432, at *3 (D. Utah Dec. 12, 2011), Utah law may indeed impose a duty to recall/retrofit.

In *Tabor v. Metal Ware Corp.,* 168 P.3d 814, 816 (Utah 2007), the Utah Supreme Court held that Utah "adheres to the traditional rule of successor nonliability" for harm caused by defective products sold by a predecessor (subject to four exceptions) and "imposes on . . . successor corporation[s] an independent post-sale duty to warn[.]" These two duties follow the Restatement (Third) of Torts: Products Liability, sections 12 and 13 (1998). *Tabor,* 168 P.3d at 818. And WMT

has not alleged that there is any reason why Utah law would not also recognize a duty to recall as articulated in Section 11 of the Restatement.

But, even if Utah law does recognize the claim, WMT is correct that Plaintiff has failed to state a claim for failure to recall. Utah would likely follow section 11 of the Restatement (Third) of Torts on liability for a failure to recall or retrofit. Under that section, a duty to recall is imposed when "(1) a governmental directive issued pursuant to a statute or administrative regulation specifically requires the seller or distributor to recall the product; or (2) the seller or distributor, in the absence of a recall requirement . . . , undertakes to recall the product;" **and** "the seller or distributor fails to act as a reasonable person in recalling the product." Restatement (Third) of Torts: Prod. Liab. § 11. Plaintiff has alleged only that WMT failed to recall the product, which is insufficient to state a claim under the Restatement. The court therefore grants WMT's motion to dismiss Plaintiff's claim for failure to recall.

### 3.   Count VI: Breach of Express Warranty

Count VI of Plaintiff's amended complaint alleges a breach of express warranty. "To prove that there was an express warranty, Plaintiff[] must show that (1) Defendant[] made affirmations or promises, including product descriptions, that (2) became a basis of the bargain." *Stanley v. Mylan Inc.*, No. 1:09-CV-124 TS, 2010 WL 3718589, at *4 (D. Utah Sept. 17, 2010), *overruled on other grounds by Elkins v. Mylan Labs., Inc.*, No. 1:12-CV-255 TS, 2013 WL 3224599 (D. Utah June 25, 2013); *see also* Utah Code § 70A-2-313 (Express warranties). Defendants argue that this claim must be dismissed because Plaintiffs have not adequately pled reliance.

Plaintiff's complaint alleges that "[t]hrough sales representatives, consultants, printed materials, and other advertising and marketing efforts, Defendants made express representations to healthcare providers and patients, including Plaintiff and Plaintiff's healthcare providers about the safety and efficacy of the Wright Hip System." Am. Compl. ¶ 70. These representations

included the assurance that the Wright Hip System "was safe and effective for its intended use," and "'substantially equivalent' to other hip replacement products." *Id.* at ¶¶ 26, 18. Plaintiff's opposition memorandum also directs the court to statements made by WMT in its disclosures to the SEC and statements made by WMT in its Sales and Marketing efforts. Opp'n WMT Mot. Dismiss at 7–8. But the court cannot consider this extrinsic evidence on a motion to dismiss. *See* discussion *supra* pp. 11-12. And even if it could consider these statements, Plaintiff has still failed to state a claim for breach of express warranty because he has failed to plead reliance. *Mgmt. Comm. of Graystone Pines Homeowners Ass'n on Behalf of Owners of Condominiums v. Graystone Pines, Inc.*, 652 P.2d 896, 900 (Utah 1982).

"[R]eliance is necessary to establish a cause of action for express warranty." *Id.* To state a claim, Plaintiff must allege that the product descriptions were communicated to him or his doctor and became the basis of the bargain. Plaintiff alleges neither. Plaintiff only alleges that WMT's "express representations" were made "to healthcare providers and patients, including Plaintiff and Plaintiff's healthcare providers." Am. Compl. ¶ 70. But Plaintiff fails to allege *how* those warranties became a basis of the bargain. In his response memorandum, Plaintiff argues that "[w]e know that [WMT's] representations about safety and performance became the basis of the bargain because [Plaintiff] selected and received a Wright prosthetic hip system." Opp'n WMT Mot. Dismiss at 8. But this conclusory logic is insufficient to state a claim.

As this court held in *Burningham v. Wright Medical Grp., Inc.,* No. 2:17-cv-02, 2018 WL 542708 at * 3 (D. Utah Jan. 23, 2018) and in *Stanley v. Mylan, Inc.*, No. 1:09-CV-124 TS, 2010 WL 3718589, at *4 (D. Utah Sept. 17, 2010), mere recitations that Plaintiff relied are not enough to state a claim for breach of express warranty. Under *Twombly* and *Iqbal*, the Court accepts well-pleaded factual allegations but disregards conclusory allegations that recite elements of causes of

action. Given Plaintiff's conclusory allegations, Plaintiff's breach of express warranty claim must be dismissed because he has failed to plead facts that could establish reliance.

## C. CLAIMS THAT MUST BE PLED WITH PARTICULARITY

Fed. R. Civ. P. 9(b) states that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." This pleading requirement must be applied to any case brought in federal court where *federal* law has held that it should be applied. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Id.* (emphasis in original) (quoting *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir. 1985)). WMT moves to dismiss three claims brought by Plaintiff that must be plead with particularity: Count VIII, fraudulent misrepresentation; Count IX, fraudulent concealment; and Count X, negligent misrepresentation.[7]

To satisfy the particularity standard of Fed. R. Civ. P. 9(b), a plaintiff alleging fraud or deceit must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds),* 924 F.2d 176, 180 (10th Cir.1991)). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of alleged fraudulent behavior. *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006) (citation omitted). The purpose of this requirement is "to afford defendant fair notice of plaintiff's claims and the

---

[7] Claims for "fraud and negligent misrepresentation" must be plead "with particularity as required by Fed. R. Civ. P. 9(b)." *Heaton v. Am. Brokers Conduit*, 496 F. App'x 873, 876 (10th Cir. 2012).

factual ground upon which [they] are based[.]" *Koch*, 203 F.3d at 1236 (quoting *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 987 (10th Cir.1992)).[8] The court first addresses the factual allegations asserted by Plaintiff and then turns to the individual claims.

### 1. Factual Allegations[9]

Plaintiff first alleges Defendants [WMT and WMG][10] "recklessly, knowingly, intentionally, and fraudulently misrepresented to the medical community and the general public, including Plaintiff and Plaintiff's healthcare providers, that the Wright Hip System was safe and effective for its intended use." Am. Compl. at ¶ 26. These representations allegedly were false, and WMT knew or should have known they were false because "[b]y 2008, Defendants had received hundreds of reports" from "doctors reporting Wright Hip System failures." *Id.* at ¶ 19. These complaints allegedly described complications arising from the implantation, including "bone cysts; pseudo-tumors; metallosis and osteolysis; high levels of metal ions, such as chromium and cobalt, in the bloodstream; detachment; disconnection, and/or loosening of the acetabular cup; loosening of the femoral component; and other complications requiring revision surgery." *Id.* ¶ 20.

Additionally, Plaintiff alleges that WMT had "legal and moral obligations to cease promoting, marketing, selling, and defending the Wright Hip System," but that "WMT "did not notify physicians, including Plaintiff's orthopedic surgeon, of the device's propensity to fail." *Id.*

---

[8] Plaintiff argues that Defendants have fair notice of the claims because there are hundreds, if not thousands, of lawsuits pending related to the Wright Hip System. But those actions are not joined with this action. Plaintiff still must meet his burden to plead the facts of *his* case.

[9] In Plaintiff's opposition, Plaintiff cites to the allegations he made in his Amended Complaint in "Dkt 1." But Docket 1 is not the docket entry for the operative complaint in this case. Additionally, Plaintiff references exhibits attached to his opposition memorandum. But as discussed above, the court cannot consider this extrinsic evidence at the motion to dismiss stage. *See supra* pp.11-12.

[10] Plaintiff does not distinguish between WMT and WMG in his Amended Complaint. Nevertheless, in deciding the motion to dismiss, the court accepts as true that both Defendants made the statements.

at ¶ 21. Thus, WMT "recklessly, knowingly, intentionally and fraudulently concealed and suppressed adverse information relating to the safety and performance of the Wright Hip System from the medical community . . . including Plaintiff and Plaintiff's healthcare providers." *Id.* at ¶ 27. These allegations are then summarized at paragraph twenty-nine, where Plaintiff lists ten "material facts regarding the safety and performance of the Wright Hip System" that allegedly were "misrepresented and actively concealed." *Id.* at ¶ 29.[11]

Plaintiff also alleges that WMT made fraudulent or negligent misrepresentations in the "510(k) process" application submitted to the Food and Drug Administration (FDA).[12] WMT responds that these representations may not be considered by the court because they were made to the FDA and, as the Supreme Court held in *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001), "any state-law fraud-on-the-FDA claims conflict with, and are therefore impliedly pre-empted by, federal law." Plaintiff acknowledges that he may not seek relief against WMT on the grounds that it fraudulently misled the FDA, but he still asks the court to consider the statements for purposes of his other state law claims. The court need not determine whether it may consider these statements because Plaintiff has failed to allege that he relied on them in

---

[11] These include, for example:

> (a) the Wright Hip System was not as safe as other available hip implant devices;
> (b) The Wright Hip System had an unacceptably high rate of failures requiring revision surgery; . . .
> (d) patients implanted with the Wright Hip System were at increased risk of experiencing painful and debilitating product failure and were more likely to undergo revision surgery than patients using other hip implant devices; . . .
> (h) surgical implantation according to recommended specifications was substantially more difficult than other hip replacement products, and proper surgical implantation was substantially less likely to occur . . . .

[12] The "510(k) process" is a "short-cut" for FDA approval for devices that "were already on the market prior to the [Medical Device Amendments] enactment in 1976" and may qualify for the "predicate-device exception." *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 345 (2001). Qualifying for this exception is known as the "§ 510(k) process." *Id.*

making his decision to purchase the Wright Hip System. Thus, the court will leave the preemption issue for another day.[13]

### 2. Count VIII: Fraudulent Misrepresentation

To state a claim for fraudulent misrepresentation, Plaintiff must plead the following elements:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003) (internal citation omitted). Plaintiff has asserted two separate fraudulent representations by WMT: 1) that the Hip System was safe and effective and 2) that the Hip System was substantially equivalent to other hip systems. As to the first, Plaintiff has entirely failed to plead the "who, what, when, where, and how" of the fraud. Besides a general allegation that "Defendants," meaning WMG and WMT, represented to the public and to physicians that the Hip System was safe, Plaintiff fails to allege any specific facts relating to these representations. Thus, his allegations lack the "what," "when" and "where" of the alleged fraud. More importantly, Plaintiff has entirely failed to identify the statements on which he relied in making his decision to choose the Hip System.

As to the representation in the disclosures to the FDA that the Hip System was substantially equivalent to other products, Plaintiff has pled with particularity the content of fraudulent representation and the circumstances of the statement, namely that it was contained in Defendants'

---

[13] The court in *Jorgensen v. Wright Medical Grp., Inc.*, No. 2:18-cv-366 (D. Utah Nov. 5, 2018) held that the *Buckman* decision regarding preemption disqualifies the statements made to the FDA from the court's consideration on all claims. *See* Memorandum Decision Granting in Part and Denying in Part Motion to Dismiss, ECF No. 25. This court does not reach that issue.

§ 510(k) disclosure to the FDA. But Plaintiff has failed to allege that he was aware of the statement or that he relied upon it. Thus, Plaintiff's claim for fraudulent misrepresentation must be dismissed for failure to state a claim.

### 3. Count X: Negligent Misrepresentation

To state a claim for negligent misrepresentation, plaintiff must show that:

> (1) [Plaintiff] reasonably relied on the defendant's representation, (2) the representation constitutes a "careless or negligent misrepresentation of a material fact," (3) the defendant "had a pecuniary interest in the transaction," (4) the defendant "was in a superior position to know the material facts," and (5) the defendant "should have reasonably foreseen that the injured party was likely to rely upon the" misrepresentation.

*Mitchell v. Smith*, No. 1:08-CV-103 TS, 2010 WL 5172906, at *8 (D. Utah Dec. 14, 2010) (quoting *Price–Orem Inv. Co. v. Rollins, Brown & Gunnel, Inc.,* 713 P.2d 55, 59 (Utah 1986)). Plaintiff's claim for negligent misrepresentation appears to be premised upon the same representations as his claim for fraudulent misrepresentation. Indeed, Plaintiff has not alleged any additional representations by Defendants beyond those identified on his claim for fraudulent misrepresentation. And Plaintiff has not alleged that he relied on any of the representations identified in his Amended Complaint. Although WMT had a pecuniary interest in the sale of the Hip Systems and was in a superior position to know the material facts related to the Hip System, Plaintiff has not identified the careless or negligent statements by Defendant on which he relied in making his decision to purchase the Hip System. His claim for negligent representation must therefore be dismissed.

### 4. Count VIII: Fraudulent Concealment

Under Utah law, "in order to establish fraudulent concealment, 'a plaintiff must prove the following three elements: (1) the nondisclosed information is material, (2) the nondisclosed information is known to the party failing to disclose, and (3) there is a legal duty to communicate.'"

*Smith v. Frandsen*, 94 P.3d 919, 923 (Utah 2004) (quoting *Hermansen v. Tasulis,* 48 P.3d 235, 242 (Utah 2002)).

WMT lumps Plaintiff's fraudulent concealment claim under the category of "fraud claims," and argues that the claim should be dismissed because Plaintiff failed to plead with particularity the circumstances constituting fraud, including the "time, place, and contents of the false representation." *See* WMT Mot. Dismiss at 10–13. But fraudulent concealment is a unique cause of action, separate from fraudulent misrepresentation. It is predicated on the premise that the defendant *failed* to disclose material information, not on the fact that the plaintiff *relied* on fraudulent information.

Plaintiff has pled with particularity that Defendants were aware of material information related to the safety and effectiveness of the Hip System that they failed to disclose. *See* Am. Compl. at ¶¶ 18, 29. As WMT does not challenge the other elements of Plaintiff's claim for fraudulent concealment, the court does not examine whether Plaintiff has successfully alleged that WMT owed him a legal duty to disclose the material information. Accordingly, the court denies WMT's motion to dismiss Plaintiff's claim for fraudulent concealment.

### III.     WMT'S MOTION TO STRIKE

#### A.  Legal Standard

WMT moves to strike Plaintiff's demands for punitive damages and for prejudgment interest under Fed. R. Civ. P. 12(f). Under Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The rule's purpose is to conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case." *Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.*, 173 F.R.D. 275, 285 (D. Colo. 1997). But Rule 12(f) motions "are a generally-disfavored, drastic remedy." *Id.* In fact, they are "considered purely cosmetic . . . 'time wasters,' [and] there appears

to be general [federal] judicial agreement . . . that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy." *Skyline Potato Co. v. Hi-Land Potato Co.*, No. CIV 10-0698 JB/RHS, 2012 WL 6846386, at *5 (D.N.M. Dec. 31, 2012) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1382, at 433–36 (3d. ed. 2004)).

## B. ANALYSIS

### 1. The Relief Sought is not "Redundant, Immaterial, Impertinent, or Scandalous"

WMT does not allege that Plaintiff's claims for punitive damages or prejudgment interest are "redundant, immaterial, impertinent, or scandalous." WMT instead attacks the legal merits of Plaintiff's entitlement to these remedies under Utah law, arguing that "Plaintiff cannot support a demand for punitive damages" and "Plaintiff is . . . not entitled to an award of prejudgment interest." WMT Mot. Dismiss at 21, 22. These arguments do not appear to fall into any of the Rule 12(f) categories. At best, WMT has argued that these remedies are "immaterial." But even under that theory, WMT's motion to strike fails because "[a]llegations will not be stricken as immaterial under this rule unless they have no possible bearing on the controversy." *Skyline Potato Co.*, 2012 WL 6846386, at *5. These claims may still have some possible bearing on the controversy for several reasons.

First, Plaintiff may be entitled to assert a claim for punitive damages. Under Utah law, punitive damages may be awarded when:

> [I]t is established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others.

*Farm Bureau Life Ins. Co. v. Am. Nat'l Ins. Co.*, 408 F. App'x 162, 166 (10th Cir. 2011) (quoting Utah Code § 78B–8–201(1)(a)). WMT argues that the only two claims for which punitive damages

could be awarded are fraudulent misrepresentation and fraudulent concealment and if the court dismisses those claims, it should strike the claims for punitive damages as well. But the court has not dismissed the claim for fraudulent concealment. Additionally, Plaintiff may seek punitive damages on any of his claims where he can establish that WMT's "negligence manifest[ed] a knowing and reckless indifference toward the rights of others." *Diversified Holdings, L.C. v. Turner*, 63 P.3d 686, 699 (Utah 2002). Thus, the motion to strike Plaintiff's claim for punitive damages is denied.

Second, Plaintiff may be able entitled to prejudgment interest. Under Utah law, prejudgment interest is authorized on special damages awards in personal injury judgments. *See* Utah Code § 78B-5-824. Special damages include "those expenses that [plaintiffs] have paid out of pocket, for which they have used their own money and which they will not get until the settlement of their action." *Corbett v. Seamons*, 904 P.2d 229, 235 (Utah Ct. App. 1995) (alteration in original) (quoting *Gleave v. Denver & Rio Grande West. R.R.,* 749 P.2d 660, 672–73 (Utah Ct. App. 1988), *cert. denied*, 765 P.2d 1278 (Utah 1988)). Plaintiff has requested special damages for *past* medical expenses, lost wages, and loss of earning capacity.[14] Thus, Plaintiff may be entitled to prejudgment interest.

### 2. WMT Fails to Argue Prejudice

Finally, WMT fails to argue that it would be prejudiced by allowing Plaintiff to proceed with his claims for punitive damages and prejudgment interest. "Even where the challenged allegations fall within the categories set forth in the rule, a party must usually make a showing of prejudice before the court will grant a motion to strike." *See Sierra Club*, 173 F.R.D. at 285. WMT has failed to argue that WMT has been prejudiced by Plaintiff's request for punitive damages and

---

[14] "'[S]pecial damages actually incurred' does not include damages for future medical expenses, loss of future wages, or loss of future earning capacity." Utah Code § 78B-5-824(6).

prejudgment interest. Indeed, Plaintiff may be entitled to both. For these reasons, the court denies WMT's Motion to Strike.

## IV.    LEAVE TO AMEND

Although Plaintiff has yet to seek leave to amend, the court recognizes that its dismissal of Plaintiff's claims is without prejudice and Plaintiff may therefore wish to file an amended complaint to correct the deficiencies identified in this opinion. The court sees no reason to delay the proceedings by requiring that Plaintiff file a separate motion for leave to amend. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (citation omitted). None of these justifications are present here.

This is not a case that implicates undue delay, bad faith or a dilatory motive. And WMT will not be prejudiced by granting Plaintiff an opportunity to amend. Undue prejudice often "occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) (comparing new claims proposed two months before trial in *Hom v. Squire*, 81 F.3d 969, 973 (10th Cir.1996), with claims which "track the factual situations set forth" in *Gillette v. Tansy*, 17 F.3d 308, 313 (10th Cir.1994), and claims involving substantially similar issues in *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751–52 (10th Cir. 1975)). But there is no indication that Plaintiff intends to inject new factual issues into the lawsuit. Rather, he presumably will attempt to plead correctly the elements of the dismissed claims. Under these circumstances, Plaintiff is given leave to amend his complaint. Any amended complaint must be filed within 14 days from the date of this order.

## ORDER

The court **HEREBY ORDERS THAT:**

1) WMG's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 9) is **GRANTED**. Wright Medical Group, Inc. is dismissed without prejudice;

2) WMT's Motion to Dismiss for Failure to State a Claim (ECF No. 7) is **GRANTED** IN PART AND **DENIED** IN PART:

   **A.** Plaintiff's claims for a) strict liability, manufacturing defect; b) negligent failure to recall/retrofit; c) breach of express warranty; d) fraudulent misrepresentation; and e) negligent misrepresentation are dismissed without prejudice; and

   **B.** Defendant's motion to dismiss Plaintiff's claim for fraudulent concealment is denied;

3) WMT's Motion to Strike (ECF No. 7) is **DENIED; and**

4) Plaintiff may amend his Amended Complaint within **fourteen days** of this order.

Signed March 28, 2019

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge